**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| TIMOTHY MARCUS MAYBERRY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:23-CV-64-JEM |
| | ) | |
| JENNA SCHLARF, | ) | |
| Defendant, | ) | |

**OPINION AND ORDER**

This matter is before the Court on a motion for partial summary judgment ECF 156, filed by Defendant Jenna Schlarf on June 16, 2025.

**I.    Background**

Timothy Marcus Mayberry, a prisoner without a lawyer, proceeds on a First Amendment claim against Jenna Schlarf for retaliating against him for filing a lawsuit and prison complaint against her by refusing to mail his outgoing legal correspondence, reopening some of his legal correspondence and placing them in different envelopes, improperly tampering with his remittance slips for legal mail postage causing the postage to be denied, taking three of his books from his cell, and issuing a false conduct report against him in September 2022. ECF 65. He also proceeds on state law claims of intentional infliction of emotional distress and defamation based on the same allegations. *Id.*

On June 16, 2025, Schlarf filed a motion for summary judgment on only the State law claims, asserting that the alleged conduct fell within the scope of the Indiana Tort Claims Act (ITCA) and that Mayberry had not exhausted his administrative remedies as required by the ITCA. ECF 156. In addition, Schlarf filed a motion requesting an extension of time to file her reply brief,

ECF 171, and Mayberry requested leave to file a sur-reply, which he attached and which was

considered in ruling on the instant motion. ECF 175.

The parties have filed forms of consent to have this case assigned to a United States

Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in

this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II.    Material Facts

In the operative complaint in connection with his claim of intentional infliction of

emotional distress, Mayberry specifically alleges that Schlarf "refused to allow [him] to send

outgoing mail." ECF 62-1 at 6-7. Mayberry was granted leave to proceed on this claim based on

the same allegations as his federal claims, which included the purported refusal to send outgoing

mail. ECF 65. However, in the response to the motion for summary judgment, he asserts that "my

state claims arise from [Schlarf's] defamatory accusations of me stealing from my job assignment

at the Braille Shop . . . not from the way she mishandled my outgoing legal mail." ECF 162-1 at

3, 8. Therefore, the Court will accept Mayberry's most recent formulation of his State law claims.

The facts relevant to the State law claims are as follows. According to a declaration, Schlarf

served as a caseworker at the Miami Correctional Facility, and her job duties entailed conducting

cell searches with custody staff and completing conduct reports. ECF 156-2. On September 28,

2022, Schlarf conducted a search of Mayberry's cell and completed a conduct report based on her

belief that certain materials had been improperly removed from the facility Braille shop. *Id.* That

conduct report reads:

> On September 28th, 2022, at approximately 07:15 a.m., I, Caseworker J. Schlarf,
> was in the process of searching the cell belonging to [Mayberry] with Sgt. Griffin
> to locate certain items that were possibly removed/stolen from ICI/Braille Shop. In
> the process of searching [Mayberry's] cell, I had came across items that are
> described as spiral binded hand made books with clear plastic covers (13 in total)
> along with finding those items, I had also located paperclips, black paper clips,

2

> white out pens & sticky note/post it material. I removed the said items from the cell due to those items possibly being stolen/unauthorized items that appear to be removed from ICI/Braille Shop.
>
> I, Caseworker Schlarf, had gone to ICI/Braille Shop to speak with ICI Foreman W. Carpenter & he had confirmed for me that those items are used in the Braille/MBP Shop in ICI.

ECF 81-1 at 425. Sergeant Griffin provided a written statement that he assisted Schlarf with the search and that she confiscated three binders that she believed were unauthorized property. ECF 119 at 9. According to an incident report, Schlarf spoke with Supervisor Harris about the confiscated items. ECF 81-1 at 431-32. At first, he had verbally confirmed that the plastic binding, hard plastic covers, and office supplies were from the Braille shop. *Id.* However, when Schlarf asked him for a written statement, he declined and said that he could not confirm that the items were taken from the Braille shop. *Id.*

Schlarf then asked Supervisor Carpenter if he could review her photograph of the items and inform her if the items were from the Braille shop. ECF 119 at 24-32. She noted that her efforts to obtain a written statement from Supervisor Harris were unsuccessful. *Id.* Supervisor Carpenter represented that the items were from the Braille shop and provided a written statement to Schlarf. *Id.* Once the conduct report issued, Mayberry requested statements from Supervisor Harris and two other inmates. *Id.* at 8. Supervisor Harris represented that "the supplies taken were authorized and approved." *Id.* at 20. On October 14, 2022, a hearing officer dismissed the conduct report, representing that she spoke with a supervisor who "verified all items are provided at job site and utilized for job duties." *Id.* at 37.

> In his response to her statement of facts, Mayberry disputes Schlarf's attestation as follows:
>
> I dispute this fact because [Schlarf] uses "her search" as to imply that only one search was conducted. Sgt. Griffin's statement juxtaposed to [Schlarf's] false conduct report proves that either she conducted a second unauthorized search after Sgt. Griffin was no longer present, or Sgt. Griffin entirely missed her taking ten

3

additional books and various other office supplies. The former is likely the truth. [Schlarf] also had no logical basis to believe any personal property in my possession was stolen from my job assignment, the Braille shop, or anywhere for that matter – she simply made up that justification post hoc to cover her retaliatory and illegitimate taking of my property.

ECF 163 at 5. Mayberry also attests that, on September 28, 2022, Schlarf "was outside of [his] cell location and loudly yelled that she took my property because I was a thief and that I should not be stealing things that did not belong to me" and that correctional staff and other inmates made comments suggesting that he was a thief. *Id.* at 6.

Michael Ward attested that he reviewed the official records of the Office of the Indiana Attorney General. ECF 156-3. He found no notice of tort claim submitted by Mayberry in relation to the allegations in this case. *Id.*

### III.   Standard of Review

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

IV.    Analysis

Schlarf argues that she is entitled to summary judgment on the State law claims because the alleged conduct fell within the scope of the ITCA and Mayberry has not exhausted his administrative remedies as required by the ITCA. "The Tort Claims Act governs lawsuits against political subdivisions [and] their employees. It requires early notice that a claim exists, and it provides substantial immunity for conduct within the scope of the employees' employment." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000). The ITCA provides that a plaintiff must provide a notice to the political subdivision and its employees within one hundred and eighty (180) days of the loss. Ind. Code § 34-13-3-8(a). "The Tort Claims Act bars suits for which timely notice has not been given." *Celebration Fireworks*, 727 N.E.2d at 452.

To proceed on a state law claim against an Indiana employee without submitting the notice required by the ITCA, "a lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5. Though framed as a pleading requirement in the statute, Indiana courts have considered these exceptions at the summary judgment stage for the purpose of assessing whether the employee's conduct falls within the purview of the ITCA. *See, e.g., Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020) ("When the facts are undisputed and 'would not allow a jury to find that the tortious acts were within the scope of employment,' however, a court may conclude as a matter of law that the acts were not in the scope of employment.") (quoting *Cox v. Evansville*, 107 N.E.3d 453, 460 (Ind. 2018)); *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003) ("[A] government employee defendant has a complete defense: the action occurred within the scope of employment. If post-complaint

discovery supports this claim, then it is appropriate that the defendant file a motion for summary judgment.").

A. Waiver of the Exhaustion Defense

As an initial matter, the Court addresses Mayberry's argument that Schlarf has waived the exhaustion defense. Mayberry argues that Schlarf was required to assert the exhaustion defense prior to discovery pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), and that she should not have asserted it for the first time at the summary judgment deadline.

The argument that Schlarf waived the exhaustion defense is meritless. First, *Pavey* dictates that the exhaustion defense should ordinarily be resolved prior to discovery on the merits but applies only to the exhaustion defense set forth in the Prison Litigation Reform Act (PLRA) under 42 U.S.C. § 1997e(a); *Pavey* does not concern or even acknowledge the ITCA, nor does it purport to extend any exhaustion requirements or other affirmative defenses outside the PLRA. Next, Schlarf promptly asserted immunity under the ITCA and Mayberry's failure to file a notice of tort claim just fifteen days after Mayberry was granted leave to proceed on the State law claims. ECF 65, ECF 69. "While [Rule] 8(c) directs parties to raise affirmative defenses in the pleadings, a delay in raising an affirmative defense only results in waiver if the other party is prejudiced as a result." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 632 (7th Cir. 2010) (citing Fed. R. Civ. P. 8(c)). Given that Schlarf's assertion of defenses related to the ITCA were not delayed, Mayberry could not have been prejudiced by such a delay. Therefore, Schlarf has not waived the exhaustion defense under the ITCA.

B. Strike

Mayberry argues that the Court should strike the declaration of Michael Ward, attached as an exhibit to the motion for summary judgment, because Schlarf failed to disclose his identity as

required by Rule 26. Fed. R. Civ. P. 26(a)(1); 26(e)(1). Rule 26(a)(1)(A)(i) requires parties to

provide initial disclosures including "the names of individuals likely to have discoverable

information." However, Rule 26(a)(1)(B)(iv) exempts cases brought by pro se prisoners like this

one.[1] In other words, Rule 26 did not require Schlarf to disclose the identity of any witnesses

during discovery. Although Rule 26(e)(1) requires parties to supplement their prior responses to

written discovery requests if they learn that the prior responses are incomplete or incorrect,

Mayberry does not identify any discovery response that Schlarf should have supplemented with

the identity of Michael Ward. Because Mayberry has not demonstrated a violation of the discovery

rules, the Court declines to the strike the declaration of Michael Ward.

The Court does not understand Mayberry as seeking an opportunity to conduct discovery

under Rule 56(d), but, even if he is, Mayberry has not shown that he "cannot present facts essential

to justify its opposition." Fed. R. Civ. P. 56(d). Mayberry maintains that he would have sought

leave to serve Ward with discovery requests regarding the ITCA's application to his claims and

the ITCA exceptions. However, it is entirely unclear why a witness's understanding of the law

would be relevant, much less essential, particularly when that witness's only testimony is that the

official government records do not contain a particular document. It is similarly unclear how

Mayberry could obtain such information from Ward by serving discovery requests given that the

Federal Rules of Civil Procedure do not authorize the Court to subpoena third parties for responses

to interrogatories or requests for admissions. *See* Fed. R. Civ. P. 33, 36, 45.

C. Indiana Tort Claims Act

Schlarf argues that her issuance of the conduct report was within the scope of her

employment. "To be within the scope of the employment, conduct must be of the same general

---

[1] Indeed, at the outset of discovery, the Court expressly advised the parties that they were not required to exchange initial disclosures. ECF 70.

nature as that authorized, or incidental to the conduct authorized," and "[e]ven tortious acts may fall within the scope of employment" if the employee's "purpose was, to an appreciable extent, to further his employer's business." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (quoting Restatement (Second) Agency § 229 (1958); *Kemezy v. Peters*, 622 N.E.2d 1296 (Ind. 1993)) (quotation marks omitted). "Ultimately, [the Indiana Supreme Court has] found that the scope of employment encompasses the activities that the employer delegates to employees or authorizes employees to do, plus employees' acts that naturally or predictably arise from those activities." *Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020).

Significantly, Schlarf has attested that issuing conduct report to inmates is within the scope of her duties, which Mayberry does not dispute. While her employer would likely prefer that all conduct reports be accurate and meritorious, the fact that a conduct report has been refuted after further investigation or rejected after a successful challenge by a prisoner is a reasonably foreseeable circumstance of issuing conduct reports and affording fair hearings. In other words, the issuance of conduct reports that are inadvertently incorrect is a natural and predictable consequence of issuing conduct reports and is also within the scope of Schlarf's employment. Her verbal statements to Mayberry on the same day are fairly characterized as explaining her reasons for confiscating items and issuing the conduct report, and such explanations, even if overzealous, are incidental to the act of issuing conduct reports.

Mayberry argues that the record shows that Schlarf issued an intentionally false conduct report, contending that Schlarf "had no logical basis to believe any personal property in my possession was stolen from my job assignment." However, the undisputed record shows that, prior to issuing the conduct report, Schlarf had found items in Mayberry's cell, took photographs, sent the photographs to Supervisor Carpenter, and received confirmation from him that items could be

found in the Braille shop. While her investigatory efforts could have been more robust, it would not have been illogical to suspect theft under these circumstances as Mayberry suggests.

Nor is there any evidence affirmatively indicating that Schlarf knew her accusation to be false. Though Supervisor Harris declined to confirm in writing that the items were taken from the Braille shop, the undisputed record shows that Schlarf understood Supervisor Harris as saying that the confiscated items were from the Braille shop during her verbal conversation with him. It further shows that, while Supervisor Harris declined to confirm what Schlarf understood to be his prior statement, he stopped short of refuting it by stating that he had authorized Mayberry's possession of those items.

Moreover, it seems likely that even issuing an intentionally false conduct would fall within the scope of employment. *See Barnett v. Clark*, 889 N.E.2d 281, 284 (Ind. 2008) (collecting cases in which Indiana courts found criminal acts, including assault, molestation, and theft, to be within the scope of employment). An intentionally false conduct report is arguably of the same general nature as writing accurate or inadvertently false conduct reports. The writing of this conduct report took place during Schlarf's working hours at the facility, and the occasional issuance of intentionally false conduct reports within the Indiana Department of Correction strikes the Court as a reasonably foreseeable consequence of allowing its employees to issue conduct reports at correctional facilities throughout the State of Indiana. Additionally, the statutory exception to the immunity afforded by the ITCA contemplates an act that is "*clearly* outside of the scope of the employee's employment." Ind. Code § 34-13-3-5(c)(2) (italics added for emphasis). Based on the undisputed record, the Court finds that the issuance of the conduct report was within the scope of Schlarf's employment for purposes of the ITCA.

9

This finding does not end the analysis of ITCA exceptions because willful or wanton misconduct is a separate exception to the immunity afforded by the ITCA. *See Biddle v. Cushingberry*, 2024 WL 1050434, at *2 (S.D. Ind. Mar. 11, 2024) (citing *Feldhake v. Buss*, 36 N.E.3d 1089, 1093 (Ind. Ct. App. 2015)). In the context of the ITCA:

> Willful or wanton misconduct consists of either: 1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk. The elements of willful or wanton misconduct are: (1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the consequences of his conduct.

*Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204-05 (Ind. Ct. App. 2011) (quoting *U.S. Auto Club, Inc. v. Smith*, 717 N.E.2d 919, 924 (Ind. Ct. App. 1999)) (quotation marks omitted).

In this case, there is no dispute that Schlarf intended to issue the conduct report, and, given her position, she very likely knew of the consequences that ordinarily flow from issuing a conduct report. But issuing conduct reports was a legitimate part of her job, and issuing conduct reports, by itself, cannot be fairly described as misconduct, let alone willful or wanton misconduct. Consequently, to demonstrate willful or wanton misconduct in this context, Mayberry would need to show that Schlarf either wrote an intentionally false conduct report or wrote a conduct report with reckless disregard for the truth.

As detailed above, the Court finds no evidence of intentional falsehood in the record. Although in the context of defamation, the Indiana standard for recklessness is instructive. In order "[t]o demonstrate reckless disregard, 'there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication,' or proof that the false publication was made with a 'high degree of awareness of their probable falsity.'" *J.-*

10

*Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 456 (Ind. 1999) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)). In this case, the Court concludes that, on this record, no reasonable jury could find that Schlarf acted with reckless disregard for the truth.

While the follow up conversation with Supervisor Harris may have given Schlarf pause, it is counterbalanced by her understanding of her initial conversation with Supervisor Harris, the fact that Supervisor Harris did not vouch for Mayberry until after the conduct report had issued, and Schlarf's conversation with Supervisor Carpenter. At worst, the results of her investigation were ambiguous and included no evidence that affirmatively pointed to Mayberry's innocence. It is also notable that Schlarf did not conceal Supervisor Harris' reluctance to provide a written statement from Supervisor Carpenter but disclosed it without prompting. This unprompted disclosure signaled an absence of manipulative intent as well as her belief that Supervisor Harris' reluctance was misguided. Nor does the record suggest that Schlarf continued to pursue the conduct report or to accuse Mayberry of theft once Supervisor Harris provided a materially exculpatory written statement on Mayberry's behalf. On this record, no reasonable jury could find that Schlarf entertained serious doubts about the truth of the conduct report or was highly aware that it was probably false at the time she issued it.

To summarize, the Court finds that Schlarf's actions were within the scope of her employment and that the record includes no evidence suggesting that her actions amounted to willful or wanton misconduct. As a result, the ITCA affords Schlarf immunity from the claims against her arising under Indiana law unless Mayberry properly submitted a notice of tort claim relating to these claims to the State. The undisputed record demonstrates that Mayberry has not done so, so Schlarf is immune from the State law claims under the ITCA. Therefore, partial summary judgment is appropriate, leaving only the First Amendment claim against Schlarf.

## V.    Conclusion

For the foregoing reasons, the Court:

1) **GRANTS** the motion requesting an extension of time to file a reply (ECF 171) and **ACCEPTS** the reply brief as timely;

2) **GRANTS** Plaintiff's motion for leave to file a sur-reply (ECF 175) and addressed its arguments herein; and

3) **GRANTS** the motion for partial summary judgment (ECF 156) and **ORDERS** that judgment is entered on the Indiana state law claims of defamation and intentional infliction of emotional distress asserted by Timothy Marcus Mayberry against Jenna Schlarf.

SO ORDERED this 26th day of August, 2025.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record
       Plaintiff, *pro se*

12